UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ACUITY, A MUTUAL INSURANCE
COMPANY,

     Plaintiff,

    v.

RIVERDALE PACKAGING
CORPORATION,

and

LORA PROPERTY INVESTMENTS,
LLC

and

WOMBAT ACQUISITIONS LLC,

     Defendants.

Case No.: 4:24-cv-01277

**PLAINTIFF/COUNTERCLAIM DEFENDANT ACUITY'S SUGGESTIONS IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

COMES NOW plaintiff/counterclaim defendant Acuity, by and through its undersigned counsel of record, and pursuant to Rule 26(c) and local rule 4.01(A), submits the following suggestions in support of its motion for protective order in connection with several topics set forth in defendant Wombat's notice to take 30(b)(6) deposition of Acuity. A protective order is proper under 26(c) sections A and D. Acuity objects to 5 of the 30 topics in the notice.  The subject

notice is attached hereto as Exhibit A. The topics which Acuity objects to in this motion are:

**Section 1(b). Acuity's rationale for deciding to file a dec action.** Acuity objects to this topic because it requires the disclosure of privileged attorney-client communications and protected attorney work-product.

**Section 5(w). Comparison of Acuity payments and settlement offer with "other comparable first-party property claims during relevant time period."** Acuity objects to this topic because it is not relevant to any claim or defense in this lawsuit. Acuity also objects because it is overly broad, unduly burdensome, and the cost of obtaining the information is not proportional to the needs of the case.

**Section 7(bb). Other claims involving post-loss assignment of benefits.** Acuity objects to this topic because it is not relevant to any claim or defense in this lawsuit. Acuity also objects because it is overly broad, unduly burdensome, and the cost of obtaining the information is not proportional to the needs of the case.

**Section 7(cc). Appraisal demand rejections.** Acuity objects to this topic because it is not relevant to any claim or defense in this lawsuit. Acuity also objects because it is overly broad, unduly burdensome, and the cost of obtaining the information is not proportional to the needs of the case.

**Section 7(dd). Regulatory and litigation history.** Acuity objects to this topic because it is not relevant to any claim or defense in this lawsuit. Acuity also objects because it is overly broad, unduly burdensome, and the cost of obtaining the information is not proportional to the needs of the case.

For purposes of this motion, the above topics fit into three categories: (1) attorney-client communications and attorney work-product; (2) information concerning other claims; and (3) regulatory and litigation history of other claims.

The attorney-client communications are not discoverable because they are protected by a privilege that has not been waived. The information concerning other claims is not relevant to any claim or defense, nor is it proportional to the needs of the case, considering the importance of the issues at stake in the action, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Likewise, the request for regulatory and litigation history is not relevant or proportional to the needs of the case.

### A.  Attorney-Client Communications and Attorney Work-Product

From the start of discovery, counsel for Wombat has been requesting the actual substance of communications between Acuity and its outside counsel. For example, in the deposition of Dave Jostes, Acuity's Sr. Property Claims Specialist, counsel for Wombat asked what he knew about Missouri case law on the subject of post-loss assignments before the declaratory judgment action was filed.

Because the source of any such information would have been Acuity's outside counsel, counsel for Acuity objected at that time and instructed Mr. Jostes not to answer. (Dep. Dave. Jostes, 185:11-187:25, attached as Exhibit B.)

In Section 1(b) of the deposition topics, Wombat requests information about Acuity's rationale for deciding to file a declaratory judgment action. At his deposition, Mr. Jostes testified that the decision to reject the assignment was made after reviewing the policy language, checking with his supervisor and consulting outside counsel. The legal advice provided by outside counsel is the very essence of what the attorney-client privilege is intended to protect. The Missouri Supreme Court "has spoken clearly of the sanctity of the attorney-client privilege." *State ex. rel. Peabody Coal Co. v. Clark,* 863 S.W.2d 604, 607 (Mo. banc 1993).

> The relationship and the continued existence of the giving of legal advice by persons accurately and effectively trained in the law is of greater societal value … than the admissibility of a given piece of evidence in a particular lawsuit. Contrary to the implied assertions of the evidence authorities, the heavens will not fall if all relevant and competent evidence cannot be admitted.

*Id.* Confidentiality is essential if attorney-client relationships are to be fostered and effective. *State ex rep. Great American Ins. Co. v. Smith*, 574 S.W.2d 379, 383-84 (Mo. banc 1978).

In Missouri, the common law attorney-client privilege has been statutorily codified by the General Assembly. *See* Mo. Rev. Stat. § 491.060(3). Generally,

unless the privilege is waived, it protects "any professionally oriented communication between attorney and client regardless of whether it is made in anticipation of litigation or for preparation for trial." *State ex rel. Tillman v. Copeland*, 271 S.W.3d 42, 45 (Mo. Ct. App. 2008); <u>accord</u> *May Dept. Stores Co. v. Ryan*, 699 S.W.2d 134, 136 (Mo. Ct. App. 1985) ("any professionally oriented communication between attorney and client is absolutely privileged, in the absence of waiver, regardless of the anticipation of litigation.") Any such materials are non-discoverable, even if the opposing party can show a substantial need for the materials and that it would suffer undue hardship in acquiring their substantial equivalent. *Tillman*, 271 S.W.3d at 45.

Here, Wombat claims Acuity has waived the attorney-client privilege merely by virtue of the fact it consulted counsel before making the decision to file a declaratory judgment action. While the privilege may be waived, such waiver must be voluntary. *Smith v. Smith,* 839 S.W. 2d 382, 385 (Mo. App. 1992). For example, "anticipatory waiver of the attorney-client privilege may occur where the client places the subject matter of the privileged communication in issue in the litigation." *State ex rel. Chase Resorts, Inc. v. Campbell,* 913 S.W.2d 832, 838 (Mo. App. 1995). This commonly arises when a party claims "reliance on legal advice as an element of a claim or defense." *Id.*

Here, Acuity has not raised "advice of counsel" as an affirmative defense to Wombat's counterclaim for vexatious refusal to pay. Rather, the fact that

5

Acuity consulted counsel before filing the declaratory judgment action was mentioned at the deposition of Mr. Jostes only because counsel for Wombat asked about it. It should come as no surprise that Acuity consulted counsel before filing a declaratory judgment action. That mere fact does not, of itself, constitute a voluntary waiver of the attorney-client privilege. Were it otherwise, "no one would seek coverage counsel's advice." *Starr Indem. & Liab. Co. v. Cont'l Cement Co.,* 2012 U.S. Dist. LEXIS 170988, at *5, <u>quoting</u> *Botkin v. Donegal Mut. Ins. Co.,* No. 5:10cv00077, 2011 U.S. District. LEXIS 63871, at *19 (W.D. Va.).

The Missouri Court of Appeals reached the same conclusion under similar circumstances in *State ex rel. Behrendt v. Neill,* 337 S.W.3d 727 (Mo. App. 2011). In *Behrendt,* the plaintiffs in a malicious prosecution case sought discovery of the defendant's attorney-client communications. *Id.* at 727. They argued the plaintiffs had waived the attorney-client privilege by (1) pleading an "affirmative defense" that they acted reasonably and without malice, and (2) admitting at a deposition that they relied on outside counsel to develop their theories of liability against the plaintiffs. *Id.*

Under these circumstances, the court of appeals concluded the defendants had not waived the attorney client privilege by their pleadings or deposition testimony. *Id.* at 729. As to the former, the court noted, the defendants never pleaded advice of counsel as a defense. *Id.* With regard to the deposition testimony, the court concluded the defendants did not lose their privilege by

6

answering opposing counsel's deposition questions, because "a waiver extorted under cross-examination" is not voluntary". *Id.* quoting *Smith v. Smith,* 839 S.W.2d 382, 385 (Mo. App. 1992).

Here, as in *Behrendt,* Acuity has not pleaded "advice of counsel" as a defense to the vexatious refusal counterclaim, so it cannot be said to have waived the attorney-client privilege on that basis. Moreover, following the Court's rationale in *Behrendt,* the fact that Dave Jostes testified that he consulted counsel in response to the deposition question of counsel for Wombat does not constitute a waiver of the privilege. A waiver "extorted under cross-examination" is not voluntary. *Id.* at 729.

Finally, it is anticipated that counsel for Wombat will also attempt to argue that the attorney-client communications should be disclosed because they are relevant to some fact he is attempting to prove. This argument too is addressed by the court in *Behrendt.* The fact that attorney-client communications may be relevant "seems almost self-evident, but misses the point of privilege." *Id.* at 727. The fact that Plaintiffs "may find the information helpful … does not justify a finding of waiver." *Id.* quoting *State ex rel. Chase Resorts, Inc. v. Campbell,* 913 S.W. 2d 832, 838 (Mo. App. 1995).

The attorney client privilege is "a fundamental policy, to which disclosure is the exception." *State ex rel. Behrendt v. Neill,* 337 S.W.3d at 730, quoting *In re Marriage of Hershewe,* 931 S.W.2d 198, 202 (Mo. App. 1996). "Absent a waiver,

privileged materials are immune from discovery." *Id.* quoting *Chase Resorts,* 913 S.W.2d at 838. "For those reasons alone," the *Behrendt* court concluded, "all such 'relevance' arguments fail and merit no further discussion." *Id.* See also *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 601 (8th Circuit. (Mo.) 1977) ("relevance alone is not sufficient to allow discovery of attorney-client privileged communication […].")

Among the communications counsel for Wombat seeks to discover are the letters from Acuity's outside counsel setting forth their legal analysis of the assignment issue under Missouri law. For reasons set forth above, these are privileged attorney-client communications. In addition, however, they are protected under the doctrine of attorney work-product. Information or materials assembled by or for a person in anticipation for trial may be qualifiedly privileged, under the work-product rule, from disclosure to an opposing party. *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 601 (8th Circuit. (Mo.) 1977). The Supreme Court in *Upjohn Co. v. United States,* held that documents that reveal the attorney's mental processes "cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship." 449 U.S. 383, 401, 101 S. Ct. 677, (1981).

Here, Acuity first learned of a potential dispute involving the sale of the building and assignment of insurance benefits on May 24, 2024, when Dave Jostes received a telephone call from the building owner who mentioned the

8

buyer of the building wanted to take over the claim. (Dep. Dave Jostes, 125:10-24, attached hereto as Exhibit B.) Accordingly, any communication with outside counsel after that date is protected as both an attorney-client communication *and* as attorney work-product. See *Grinnell Mut. Reinsurance Corp. v. Rambo,* 2014 U.S. District. LEXIS 193878, at *6 (coverage analysis prepared by outside counsel is "clearly privileged attorney work-product") and *Mills v. Liberty Mutual. Ins. Co.* 2017 U.S. District. LEXIS 71178 at *3-4 (communications with outside counsel for the purpose of obtaining legal advice are "exactly the type of communications protected by the attorney-client privilege.")

## B.  Information Concerning Other Claims

Counsel for Wombat also requests all manner of information concerning claims *other than* the claim at issue in this lawsuit. For example, he wants Acuity to identify all other claims involving a post-loss assignment of benefits. He wants to Acuity to identify all other claims in which there has been an appraisal demand. He wants to know all cases in which Acuity has paid contractors directly instead of insureds. Acuity objects to these requests because they are not relevant to any claim or defense in this litigation. In addition, Acuity objects because the information concerning other claims is not relevant to any claim or defense, nor is it proportional to the needs of the case, considering the importance of the issues at stake in the action, the importance of the discovery in

9

resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Rule 26(b)(1).

### 1. Relevance

Here, there is no logical connection between the issue raised by Wombat in its counterclaim, i.e., whether Acuity acted vexatiously in refusing to accept the assignment, and Acuity's conduct in other claims. It should go without saying that every claim is handled according to the specific facts of the claim. And every claim has a unique set of facts. Different policy language, different state law, different insureds, different damages, etc. Accordingly, there is no reason to believe an in-depth review of other claims will provide any useful insight into the question of whether Acuity acted improperly here.

This issue was addressed under similar facts in *Olga Despotis Trust v. Cincinnati Ins. Co.*, 2014 U.S. District. LEXIS 4352 at *3, in which the plaintiff requested information regarding "claims made" and "claims paid" by the defendant insurance carrier for tornado related property damage in Missouri from 2005 to 2011. *Id.* The plaintiff in *Olga* asserted that the information was relevant to establish the insurer's "course of conduct" regarding claims paying in the time period before and after the loss. *Id.*

The *Olga* court, however, agreed with the insurer in denying the plaintiff's motion to compel. Under Missouri law, only the facts and circumstances of the claim at issue, and not the insurer's reputation or treatment of distinct, albeit

10

similar, claims are to be considered with respect to a claim of vexatious refusal to pay. *Id.* See *Morris v. J.C. Penney Life Ins. Co.,* 895 S.W.2d 73, 76 (Mo. App. 1995) (holding that "[t]he test is … how the facts appeared at the time of the refusal to pay); see also *Zackwik v. Hanover Fire Ins. co.,* 225 S.W. 135, 138 (Mo. App. 1920) (holding that the insurer's general "reputation for fairness and prompt payment" is not in issue.) Acknowledging that the information that is ultimately inadmissible may be discoverable, the court in *Olga* concluded the information sought by the plaintiff was not even "calculated to lead to the discovery of admissible evidence." *Olga,* at *3.

### 2. Proportionality and Undue Burden

Acuity also objects to Wombat's request for "other claims" information for the reason that the cost of extracting the information are not proportional to the needs of the case and therefore unduly burdensome. As set forth in the affidavit of Sara Larson, who is Acuity's General Manager of Staff Claims, Acuity's computer system does not tag, identify or categorize the specific data elements counsel for Wombat is requesting. (Affidavit of Sara Larson attached hereto as Exhibit C, ¶ 5.) Nor does it have a search function that would allow for a word search across multiple claims. (Exhibit C, ¶6) Even narrowing the search to first-party property damage claims for 10 states from 2023 to 2025, and assuming relevance, the estimated total cost of identifying the elements requested by counsel for Wombat is $2,049,100. (Exhibit C, ¶11.) That is a conservative

11

estimate and does not include the cost of IT support to run ad hoc reports. (Exhibit C, ¶12.)

Given that the requested information about "other claims" lacks any relevance in the first place, and comparing that with the significant cost of obtaining the information, the financial burden to Acuity far outweighs the extent to which the information serves the needs of this case.

### C. Regulatory and Litigation History

Counsel for Wombat also seeks information concerning other claims in which Acuity has been the subject of regulatory action or investigation, as well as other claims in which Acuity has been sued for vexatious refusal to pay.

#### 1. Relevance

Again, Wombat cannot make a threshold showing that information of this type is relevant to any claim or defense in this case. See *Martin v. Cincinnati Ins. Co.*, 2018 U.S. Dist. LEXIS 93217, at *5 (plaintiff failed to meet burden of showing that information related to other vexatious refusal to pay claims was discoverable within the meaning of Federal Rule of Civil Procedure 26) and *Olga*, supra, at *5.

#### 2. Proportionality and Undue Burden

As with the "other claims" information generally, Wombat's request for information related to other claims in which Acuity became subject to some

12

regulatory action or investigation, or other claims in which Acuity was sued for vexatious refusal to pay, also fails the proportionality test.

As set forth in her affidavit, Ms. Larson has estimated the cost of searching the individual files for data elements including regulatory action or investigation for each first-party property damage claim within the 10 designated states for the three-year period of time will exceed $2 million. (Exhibit C, ¶¶5-11.) To search for vexatious refusal claims in those same parameters, she has estimated an estimated total cost of $234,750. (Exhibit C, ¶12.) Again, even if it were relevant, the cost of obtaining the information is grossly out of proportion to the extent to which this information will serve the needs of the case.

WHEREFORE, for the foregoing reasons, plaintiff Acuity, respectfully requests an order of this Court that it is not required to produce a witness to testify concerning topics 1(b), 5(w), and 7(bb), (cc) and (dd), and for such additional relief as the Court deems appropriate under the circumstances.

### CERTIFICATE OF COMPLIANCE WITH RULE 26(c)(1)

The undersigned hereby certifies that he has in good faith conferred with other affected parties in an effort to resolve the dispute without court action.

/s/ Michael Shunk

13

Respectfully submitted,


BAKER STERCHI COWDEN & RICE
LLC

/s/ Michael Shunk
James R. Jarrow MO # 38686
Michael W. Shunk MO # 43841
2400 Pershing Road, Suite 500
Kansas City, Missouri 64108
Tel: (816) 471-2121
jarrow@bakersterchi.com
mshunk@bakersterchi.com
ATTORNEYS FOR PLAINTIFF
ACUITY, A MUTUAL INSURANCE
COMPANY


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on all parties of record by operation of the Court's electronic case filing and case management system on March 16, 2026.

/s/ Michael Shunk

14