UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

ACUITY, A MUTUAL INSURANCE,   )
                              )
          Plaintiff,          )
                              )
v.                            )          Civil Action No. 4:24-cv-01277-MTS
                              )
RIVERDALE PACKAGING           )
CORPORATION ET AL.,           )
                              )
          Defendants.         )

## AMENDED NOTICE OF VIDEOTAPED DEPOSITION
### (Rule 30(b)(6) / Rule 45)

| | |
|---|---|
| TO: | All Attorneys and Parties of Record |
| DEPONENT: | Corporate Designee of Acuity |
| DATE AND HOUR: | March 13, 2026, at 9:30 AM |
| LOCATION: | 2800 South Taylor Drive<br>Sheboygan, WI 53081 |
| COURT REPORTER: | Steno Court Reporting<br>315 W 9th St, Suite 807<br>Los Angeles, CA 90015 |
| VIDEOGRAPHER: | Steno Court Reporting |

**PLEASE TAKE NOTICE** that the attorneys for Defendant will take the video deposition pursuant to Federal Rules of Civil Procedure 30(b)(6), before a certified court reporter and a notary public duly authorized to administer oaths. You will be asked questions and to testify about the following subjects and to produce the documents identified herein.

### I. PRELIMINARY DEFINITIONS

1.      Whenever the terms "writing," "document," "correspondence," "memoranda," "minutes," "claim," and "complaint" are used, they shall be meant to

1

Exhibit A

include the original copy of any written, printed, recorded, graphic or photographic matter of any kind, any drawing, sketch, schematic, or diagrammatic rendering or other descriptive material, or any retrievable data or information, however stored, recorded or coded which is now or was at any time in your possession, custody or control or in the actual or constructive possession or custody or control of your attorneys, investigators, experts, or consultants who have any information or knowledge.

2.      Whenever the terms "Plaintiff," "Acuity Insurance Company," "you," or "your" are used, they refer to Acuity Insurance Company whose corporate designee will be appearing at the deposition. This shall include all predecessors of said party and the past and present subsidiaries and parents, agents, servants, and employees and unless privileged, counsel for said party.

3.      Whenever you are requested to provide any information which is stored in a computer or electronic file or data compilation, whether or not there is a specific request for "electronic media," state the title, format, disk number, electronic location, physical location, custodian of and person(s) with access to the file or data compilation.

4.      Whenever you are requested to produce or identify "electronic media," that term shall refer to all information created, transferred to or from and/or stored in a computer or electronic file, or data compilation, or voice mail or any other recorded messaging service; state the title, format, disc number, electronic location, physical location, custodian of and persons with access to the file or data compilation.

"Electronic media" shall also include the physical backup tapes and all other archival media, all magnetically and optically recorded documents, all archival copies, all electronically created or recorded documents, and all documents that have been logically deleted but not physically erased.

## II. PRELIMINARY GENERAL INSTRUCTIONS

1.      You will be asked at the deposition to detail the departments and areas searched for documents and/or information.

2.      You are hereby requested to separate the documents into the categories indicated by the separate numbered paragraphs below. You are also hereby requested to "bates stamp" each document produced.

3.      Production of any information or thing called for shall include all materials, "electronic media," films of any kind, data, emails, computer generated graphics, information stored on film or in a computer or computer related source and any and all other information without regard to form or location, including the knowledge of Defendants and their employees, agents and representatives. If any requested information existed at one time and is no longer available, you shall so indicate and provide a definite statement at the deposition setting forth in detail:

   a. The content, including date, nature and purpose of the material and substance of the information that is no longer available and the inclusive dates it existed; and

   b. The date, time and reason for its destruction. If destroyed pursuant to a "policy" of the Defendant, provide a true copy of the "policy," the

3

inclusive effective dates of the policy and the person or persons responsible for enacting the policy.

4.    **YOU ARE NOT** required to produce again documents previously provided in discovery. However, you will be asked to verify the completeness of the document production and the search for responsive documents and to identify, testify about the content of, and authenticate the documents.

### III. TOPICS

1. **Acuity's Claim Investigation**

    a. **Investigation timeline and scope**: Date notice received, identity and qualifications of investigating personnel (Dave Jostes and others), site inspection dates and findings, and determination of water damage source, cause, and extent, including the identity of all vendors, contractors, or trades solicited to bid on any portion of the repair (including electricians, plumbers, architects, and fire suppression vendors), and the basis for concluding the investigation was complete absent such solicitations.

    b. **Litigation**. At what point Acuity became cognizant of the likelihood of litigation associated with the claim and what policies, practices and procedures are applicable to preservation of documents with regards to the same; and the precise timing and rationale for the decision to file the declaratory judgement action.

    c. **Investigation standards compliance**: Any assessment or evaluation that the investigation and claims handling was adequate, complete, or

4

compliant with Missouri law and regulatory authority and Acuity's internal standards, including any deviations from standard procedures, and specifically including whether Acuity's building consultant communicated with or sought information from the insured or the insured's representatives regarding the scope of damage and the adequacy of temporary protective measures employed at the property, including the use of a kiddie pool to collect rainwater.

d. **Dave Jostes's authority and performance**: Jostes's training, experience, settlement authority limits, supervisory review of his handling, and response to insured communications regarding payment delays and American Express customer complaints, including the role and involvement of James Loiacono, Vice President of Claims, in approving reserve changes and the relationship between supervisory approvals and payment decisions.

e. **Acuity's investigation of the sale**. Acuity's recognition and evolution of the impact of the sale of the property at 4501 Gustine Avenue that completed around June 11, 2024, including when Acuity first learned of the sale, the impact of the sale on the evaluation of claim limits and reserves, and how Acuity typical treats the sales of properties that it insures.

2. **Assignment of Benefits and Policy Interpretation.**

f. **Investigation of assignment**. All steps taken by Acuity to investigate the factual and legal impact of the assignment of benefits, including with

reference to internal discussions, notes, memoranda and the like assessing its validity with reference to the policy and Missouri law, and Acuity's decision, rationale and motivation for not honoring the terms of the assignment, including whether the decision was made before or after Acuity reviewed the specific policy language governing assignments and before or after Acuity researched Missouri law governing post-loss assignments of benefits.

g. **Typical claims handling**. Guidelines and principles applicable to the resolution of assignment of benefits contracts concerning properties to which Acuity insures, or if none exist, to more general requirements that adjusters adjust claims in conformance with the laws of the states where it does business.

h. **Understanding of post Loss assignments of benefits**. Acuity's internal understanding, policies, practices and procedures applicable to the handling of claims that involve post-loss assignments of benefits, including with reference to practices in states that have differing laws applicable to the same and in contexts other than sales of an underlying property and its understanding of the law applicable to the same in Missouri.

i. **Industry standards applicable to occurrence-based policies**. Applicable internal standards and regulatory, administrative or insurance industry guidance about the setting and maintenance of

6

reserves for occurrence-based policies for IBNR losses and reserve setting requirements when Acuity learns of a covered occurrence.

j. **Assignment at issue**. Acuity's response to being presented with the assignment at issue, including when it first learned about the assignment, whether Acuity had planned to contest an assignment like the one at issue before being presented with the same, the impact of post loss assignments of benefits on insurer bottom line, the precise reason and timing of the denial of the assignments legitimacy, and Acuity's assessment of the validity of the assignment notwithstanding the policy language (i.e., as between Nottke and Wombat), including any cost-benefit analysis, financial impact assessment, or consideration of how an assignee might affect claim costs.

k. **Reserves for case at issue**. Understanding of the process used to set reserves for claims generally, and as applied to this case as it progressed during the pre-litigation phase, including the timeline of all reserve changes, the identity and role of each person who approved each reserve change, the dates and amounts of each change, and the relationship between reserve amounts and claim payments, including the August 9, 2024 reserve change of $200,000 approved by the Vice President of Claims and the August 13, 2024 payment of approximately $836,000.

3. **Demand for Appraisal and Claim Status.**

l. **Timing**. When Acuity first learned of the demand for appraisal executed by Nottke, and the precise steps that Acuity took in response to the same

7

internally to assess compliance with the policy, including all email server logs or electronic records showing delivery or non-delivery of the June 21, 2024 formal appraisal demand to Jostes's email address or any other Acuity address.

m. **Sworn proof of loss**. The precise facts and circumstances giving rise to Acuity's demand that Bill Nottke execute a sworn proof of loss prior to honoring the appraisal demand, including whether Acuity contends it suffered any prejudice from the absence of a sworn proof of loss.

n. **Policy, practice and procedure for sworn proof of loss**. Acuity's typical policies, practices and procedures for sworn proof of loss, including with respect to timing for requesting the same, the impact of not timely receiving a timely executed sworn proof of loss, and the functional importance of the sworn proof of loss as to the claim at issue.

o. **Claim status**. Acuity's present position about whether the claim at issue is "open" and subject to additional payments, and Acuity's typical policies, practices and procedure for handling of insurance claims pending on properties subject to sale and transfer.

p. **Document retention and claim file completeness**. Acuity's policies, practices, and procedures for retaining claim-related correspondence, including email retention and deletion policies applicable to adjusters, the frequency and method of claim log updates, and the circumstances under which claim-related communications may be absent from the

8

official claim file, including any investigation into why the formal appraisal demand dated June 21, 2024 does not appear in the claim file for this loss.

4. **Vexatious Refusal and Claim Handling Compliance.**

   q. **Internal claim handling guidelines**. Acuity's internal claim handling guidelines, manuals, best practices, and standard operating procedures applicable to first-party property claims during the period January 2024 through the present, including guidelines for investigating claims, documenting coverage analysis, communicating coverage decisions to insureds, and the standards for timeliness of claim payments.

   r. **Training and adjuster competence**. The training materials provided to adjusters, including Dave Jostes, on claim handling obligations under Missouri law, including the duty to investigate thoroughly before denying or limiting coverage, the duty to inform insureds of applicable coverage and sub-limits, and the duty to respond to appraisal demands.

   s. **Compliance assessment**. Whether any internal review, audit, quality assurance assessment, or supervisory evaluation of Jostes's handling of this claim was conducted at any time, the identity of any person who conducted such review, the findings of any such review, and any corrective action taken or recommended.

   t. **Supervisory oversight**. The role of James Loiacono, Vice President of Claims, and any other supervisory or management personnel in

9

overseeing, reviewing, or approving decisions on this claim, including the August 9, 2024, reserve change approval and any involvement in the decision to reject the assignment of benefits, reject the appraisal demand, or condition settlement on a policyholder's release.

5. **Payment Practices and Settlement Conditions.**

   u. **Basis for partial payment**. The basis for paying approximately $836,000 when Acuity's own estimate of the covered loss was approximately $1.3 million, including whether Acuity contends that any portion of its own estimate is not owed, the methodology for calculating actual cash value versus replacement cost value, and the application of any holdback, depreciation, or deductible to the payment.

   v. **Settlement offer terms**. The terms and conditions of all settlement offers made by Acuity to Riverdale, Nottke, Wombat, or any other party, including any requirement for a policyholder's release or waiver of further claims as a condition of payment, any time limitation or expiration date on any offer, and the basis for the 30-day ultimatum communicated in the August 29, 2024 correspondence providing that the offer would be automatically withdrawn if not accepted.

   w. **Consistency of payment practices**. Whether Acuity's payment practices on this claim, including the partial payment, the conditions attached to settlement, and the automatic withdrawal provision, were consistent with Acuity's practices on other comparable first-party property claims during the relevant time period.

10

x. **Communication of claim value**. All communications between Acuity and the insured, Bill Nottke, or Riverdale Packaging Corporation, regarding the amount of Acuity's repair estimate, the scope of covered repairs, whether and when the insured was informed of the estimated repair cost, and whether and when the insured was informed of the code compliance sub-limit of $60,000 against the known $3.2 million code upgrade exposure.

6. **Investigation Completeness and Scope of Estimate.**

y. **Scope of NCC estimate**. The process by which Acuity determined the scope of covered repairs, including the basis for limiting the NCC building consultant's estimate to the collapse footprint, the decision not to assess or include fire suppression system damage beyond the immediate collapse area, and whether the NCC estimate accounted for the structural engineer's finding of damaged trusses east of the collapse zone that increased the repair area.

z. **Building consultant independence**. The selection of NCC Building Consultant (Tom Ceolsky) to prepare the repair estimate, including NCC's prior relationship with Acuity, the percentage of NCC's work performed on behalf of insurance carriers, whether NCC communicated with or sought information from the insured or the insured's representatives, and whether Acuity's guidelines require its building consultants to interview or consult with policyholders.

11

aa. **Adequacy of temporary protective measures**. Acuity's assessment of the adequacy of temporary protective measures employed at the insured property during the period between the loss on January 20, 2024, and the commencement of repairs, including Acuity's evaluation of the use of a kiddie pool as a means of protecting the building interior from rainwater intrusion, and whether Acuity took any steps to ensure the property was adequately protected from further damage.

7. **Similar Claims Handling and Pattern of Conduct.**

bb. **Post-loss assignment claims**. Acuity's handling of other first-party property claims involving post-loss assignments of benefits in the five years preceding the date of this deposition, including whether Acuity honored or rejected such assignments, the basis for each decision, and whether the outcomes on those claims were consistent with Acuity's handling of Wombat's claim.

cc. **Appraisal demand rejections**. Any other claims in which Acuity rejected a demand for appraisal on the basis of a missing or untimely sworn proof of loss, including the outcome of each such claim and whether Acuity contended it suffered prejudice from the absence of the sworn proof of loss in those matters.

dd. **Regulatory and litigation history**. Any complaints filed with any state department of insurance, any regulatory actions, examinations, or market conduct inquiries, and any litigation in which Acuity has been

found to have engaged in vexatious refusal to pay or bad faith claim handling, during the five years preceding the date of this deposition.

## IV. PRODUCTION

1.    Bring all documents relied upon in answering the above requests.


Respectfully submitted,

**OTT LAW FIRM, LLC**

BY: _____ */s/  Joseph A. Ott* _____
Joseph A. Ott            #67889
75 W Lockwood Avenue
St. Louis, Missouri 63119
Telephone: (314) 293-3756
Facsimile: (314) 689-0080
Email: joe@ott.law; jerry@ott.law

*Attorney for Defendant*
*Wombat Acquisitions LLC*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of March, 2026, a true and correct copy of the foregoing was emailed to all counsel of record.

BY: _____ */s/  Joseph A. Ott* _____

13