UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ACUITY, A MUTUAL INSURANCE
COMPANY,

        Plaintiff,

   v.

RIVERDALE PACKAGING
CORPORATION,

and

LORA PROPERTY INVESTMENTS,
LLC

and

WOMBAT ACQUISITIONS LLC,

       Defendants.

Case No.: 4:24-cv-01277

**ACUITY'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

COMES NOW plaintiff Acuity, by and through its undersigned counsel of

record, and pursuant to Local Rule 4.01(C), and submits the following reply

memorandum in support of its motion for summary judgment.

## TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................. 3

II.  ARGUMENT AND AUTHORITIES ............................................................. 4

    A.  Wombat's Interpretation of the Cases ............................................. 4

    B.  RSMo § 379.195 ................................................................................. 7

    C.  Executory Nature of the Insurance Agreement ............................. 7

    D.  Waiver of "Anti-Assignment" Argument ....................................... 8

    E.  Spoliation ........................................................................................... 8

    F.  The Insured is not Dead ................................................................... 9

    G.  Payment and Repairs (Vexatious Refusal) .................................... 9

## TABLE OF AUTHORITIES

### Cases

*Adkins v. Children's Hospital,* 261 U.S. 525 (1923) ................................................. 7

*Archer v. Merchants' & Mfrs. Ins. Co.,* 43 Mo. 434, 442 (Mo. 1869) ................................. 4

*Bowden v. Am. Modern Home Ins. Co.,* 658 S.W.3d 86, 92 (Mo. App. 2022) ................. 5, 6

*Magers v. National Life & Accident Insurance Co.,* 329 S.W.2d 652, 755 (Mo. 1959) ...4, 5

### Statutes and Rules

RSMo § 379.195 ......................................................................................... 7

## I. INTRODUCTION

The caption of this case is Acuity v. Wombat, *et al.*, but the issue before the court is more accurately framed as "Riverdale vs. Wombat". That is, which of these parties would any rational businessperson prefer to have as a contracting partner? Under the circumstances—where Acuity voluntarily agreed to enter into an insurance contract with Riverdale after the standard application process, and where Acuity and Riverdale had been working together in good faith to settle this property damage claim, and where Wombat abruptly entered the scene making threats of litigation and submitting baseless and inflated repair estimates, and where Wombat has a documented history of misconduct in connection with property damage claims—the choice is quite clear.

Nevertheless, Wombat expects this Court to enter an order that, like it or not, and insurance contract notwithstanding—Wombat is the new insured. Fortunately, the law is sympathetic to Acuity's difficult position here, and it carves out an exception to the general rule permitting post-loss assignments of insurance benefits. Because Acuity's liability was not fixed, and because the insurance agreement was executory and remained personal to Riverdale, and because Missouri's public policy favoring the enforcement of contracts far outweighs any public policy that favors the transferability of claims, Acuity is not bound by the assignment under Missouri law.

## II. ARGUMENT AND AUTHORITIES

### A.  Wombat's Interpretation of the Cases

Wombat cites the 1869 Missouri Supreme Court case of *Archer v. Merchants' & Mfrs. Ins. Co.,* in support of its position. In *Archer,* however, the issue was whether the insurance carrier could raise its equitable defenses in a lawsuit brought by the assignee, as opposed to raising those equitable claims in a separate lawsuit against the insured. *Archer*, 43 Mo. 434, 442 (Mo. 1869)  In *Archer,* the insurance carrier was not challenging the assignment. *Id*. at 442. It was challenging the assignee's position that it could accept the benefits of the assignment without also being subject to the obligations.

And even if this Court were inclined to look to the *Archer* case for guidance here, the language of that case does support Acuity's position. According to that court:

> The assignment was made after the loss occurred, and it stood on the same footing as the assignment of a debt, or right to recover **a sum of money actually due**, which, like the assignment in any other chose in action, would give the assignee an equitable interest and a right to recover, subject of course, to a set-off and all other equities. (Emphasis added.)

*Id*. at. 442. Here, the "sum of money actually due" has yet to be determined. As a result the general rule permitting post-loss assignments does not apply.

The decision in *Magers v. National Life & Accident Insurance Co.,* merely establishes *general* rule that a post-loss assignment does not violate a policy provision prohibiting such assignment. *Magers,* 329 S.W.2d 652, 755 (Mo. 1959). The court took care, however, to circumscribe its holding as follows:

4

> It should be pointed out however that there may be situations in which the right of a beneficiary to assign proceeds of life insurance may be properly limited or prohibited altogether.

*Id.* In other words, the court's general rule permitting post-loss assignments applied only to the specific facts of that case, which involved a fixed amount due under a life insurance policy, and it may not apply to other post-loss assignments involving different facts.

The decision in *Magers* is silent on the issue presented here, i.e., whether the general post-loss rule applies where (1) the value of the claim has yet to be determined, (2) the determination of the amount requires the continued good-faith participation of both insurer and the insured, and (3) and the amount of the claim is decidedly not fixed.

Wombat's discussion of the *Bowden* case omits two critical aspects of that court's holding. First, the court expressly states that "[t]he rationale behind the [general rule for post-loss assignments] is that, at the time of the assignment, the insurer's liability has already become fixed. *Bowden v. Am. Modern Home Ins. Co.,* 658 S.W.3d 86, 92 (Mo. App. 2022).

Wombat argues that the court's use of the term "liability" should be limited to a right to payment, and does not also implicate the specific amount owed. There is no support for that position in the *Bowden* case. Nor does that argument make sense from a plain meaning perspective. If Party A owes Party B $1. That liability is not the same as if Party A owes Party B $1 million. The fact of some liability may be established but the liability is far from fixed.

The second aspect missing from Wombat's discussion of the *Bowden* decision is that court's statement that "Defendants have failed to make any legal or factual argument as to why this general exception should not apply in this case." *Id.* Here, by contrast, Acuity has set forth detailed legal and factually supported arguments for why the general rule for post-loss assignments should not apply.

Wombat argues that Acuity's interpretation of the term "liability" would essentially swallow the post-loss general rule. That argument is disproven by both the *Magers* and *Bowden* decisions. In both of those cases the general post-loss assignment rule applied because the amount of the liability was fixed. Here, however, that amount is not fixed.

Citing language quoted by the court in *Bowden,* Wombat argues the post-loss assignment should be permitted because it does not "modify the insurer's risk." That is an interesting argument when applied to the facts of this case. Prior to May of 2024, Acuity and its insured were working together in a cooperative fashion to settle Riverdale's property insurance claim under mutually agreeable terms. After the assignment in May of 2024, Acuity began receiving letters from a party with whom it had no connection, threatening litigation and submitting baseless damage estimates in amounts that exceeded Acuity's good-faith estimates by millions of dollars. Not to mention the fact that the party who was now claiming to be Acuity's insured had a documented history of misconduct in connection with insurance claims. Under these circumstances, it is an understatement to say that Acuity's risk was significantly modified as a result of the assignment.

Wombat suggests Acuity's insurance expert agreed with Wombat's position on the state of Missouri law with respect to post-loss assignments. The full context of Mr. Richmond's testimony tells another story. That testimony is set forth *verbatim* in the accompanying response to Wombat's statement of fact.

Wombat further suggests that Missouri's public policy that favors the enforcement of contracts is not, in fact, rooted in the United States Constitution. *Adkins v. Children's Hospital,* 261 U.S. 525 (1923), was overruled on other grounds. The language of that case cited by Acuity remains applicable here.

### B. RSMo § 379.195

Wombat's reference to RSMo § 379.195 is misplaced. That section refers to *liability* insurance. Pursuant to that section, the insurance carrier's obligation to indemnify its insured is established at the time of damage to the third-party, and it does not require the insured to first satisfy a judgment obtained by the third-party. That section exists for the protection of an insured in the specific context of liability insurance and it does not apply to the issue before the Court here.

### C. Executory Nature of the Insurance Agreement

Wombat misinterprets Acuity's argument with respect to the personal and executory nature of the insurance agreement. Acuity does not contend that its insured, Riverdale, violated the cooperation clause. Rather, it argues that the insured's obligation to cooperate and participate in settling the claim made the insurance agreement personal to Riverdale, such that Acuity should not be required to accept any substitute insured forced upon it.

Absent these characteristics of the agreement, the identity of the insured may be less important. Here, however, the significance of the identity of the insured is placed into stark relief by comparing Acuity's situation before and after the assignment. Riverdale vs. Wombat. Which of these parties would any rational actor prefer to have as an insured? If that choice is clear—and it is—then the identity of the insured is indeed a significant aspect of the insurance agreement. And why would the law *require* Acuity to accept Wombat as a substitute insured when it has no contract with Wombat and does not want to have a contract with Wombat.

### D.  Waiver of "Anti-Assignment" Argument

In one breath Wombat argues that Acuity's conduct was vexatious because it prematurely refused to accept the assignment before confirming Missouri's law on the issue. In the next it argues that Acuity sat on its rights and waited too long to assert its right to withhold consent. These are two diametrically different positions and both are wrong. Rather, the record is clear that Wombat withheld making a final decision on the assignment until after consulting local counsel. The record is also clear that Acuity has never taken a position that is inconsistent with its current position, i.e., that it does not consent to the assignment, and that Acuity has clearly communicated this position to its insured and Wombat. Acuity has not waived its position.

### E.  Spoliation

This argument does not merit much discussion. Spoliation is a remedy for the wrongful destruction of evidence under circumstances where a party had an

obligation to preserve such evidence. Here, Wombat seeks to apply this doctrine where the subject evidence—an email and attachment—have not been destroyed. In fact, it was first produce by Wombat.

The adverse inference Wombat seeks to invoke is an inference that the evidence destroyed would have been favorable to the party requesting it. Because the subject document is not destroyed, there is no need for the court to impose an inference as to its meaning. The document is in the record. Everyone can make up their own minds what it means.

### F. The Insured is not Dead

The insured in this case is Riverdale Packaging. It is not Bill Nottke. Riverdale Packaging is not dead.

### G. Payment and Repairs (Vexatious Refusal)

The remaining parts of Wombat's memorandum in opposition all relate to the merits (or lack thereof) of its vexatious refusal counterclaim. Because those issues were not raised by Acuity's motion for summary judgment, they will not be addressed here. Rather, Acuity's motion is limited to the narrow issue of whether the assignment is binding on it, and if not, whether Wombat has standing to assert a claim for vexatious refusal.

WHEREFORE, for the foregoing reasons, plaintiff Acuity, respectfully requests this Court's judgment that Acuity is not bound by the assignment between Riverdale and Wombat, and that Wombat does not have standing to assert a

counterclaim against Acuity for vexatious refusal, and for such additional relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

BAKER STERCHI COWDEN & RICE LLC

/s/ Michael Shunk
James R. Jarrow MO # 38686
Michael W. Shunk MO # 43841
2400 Pershing Road, Suite 500
Kansas City, Missouri 64108
Tel: (816) 471-2121
jarrow@bakersterchi.com
mshunk@bakersterchi.com
ATTORNEYS FOR PLAINTIFF ACUITY,
A MUTUAL INSURANCE COMPANY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on all parties of record by operation of the Court's electronic case filing and case management system on March 20, 2026.

/s/ Michael Shunk