# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION

| | | |
|---|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY, | ) | |
|     Plaintiff, | ) | |
| v. | ) | |
| RIVERDALE PACKAGING CORPORATION, | ) | |
| LORA PROPERTY INVESTMENTS, LLC, and | ) | |
| WOMBAT ACQUISITIONS LLC, | ) | Case No. 4:24-cv-01277- |
|     Defendants. | ) | MTS |
| _____ | ) | |
| WOMBAT ACQUISITIONS LLC, | ) | |
|     Counter-Claim Plaintiff, | ) | |
| v. | ) | JURY TRIAL |
| | | DEMANDED |
| ACUITY, A MUTUAL INSURANCE COMPANY, | ) | |
|     Counter-Claim Defendant. | ) | |

## DEFENDANT WOMBAT ACQUISITIONS LLC'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

## ANSWER OF WOMBAT ACQUISITIONS LLC

### Parties, Jurisdiction, & Venue

1. Defendant states that it lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 1 of the Second Amended Complaint, and therefore denies the same.

2. Defendant states that it lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 2 of the Second Amended Complaint, and therefore denies the same.

3. Defendant states that it lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 3 of the Second Amended Complaint, and therefore denies the same.

4. Defendant states that it lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 4 of the Second Amended Complaint, and therefore denies the same.

5. Wombat Acquisitions **admits** the averments contained in paragraph 5 of the Second Amended Complaint.

6. Wombat Acquisitions is a limited liability company organized under the laws of Delaware and with its principal place of business in Raleigh, North Carolina.

7. Wombat Acquisitions **admits** the averments contained in paragraph 7 of the Second Amended Complaint.

8. Wombat Acquisitions **admits** the averments contained in paragraph 8 of the Second Amended Complaint insofar as they pertain only to Plaintiff Acuity's claim for relief pursuant to 28 U.S.C. § 1332(a). Defendant Wombat Acquisitions specifically **denies** that diversity jurisdiction exists over Defendant Wombat Acquisitions' counterclaim for vexatious refusal to pay pursuant to Mo. Rev. Stat. § 375.420.

9. Wombat Acquisitions **denies** the averments contained in Paragraph 9 of the Second Amended Complaint. 28 U.S.C. § 2201(a) does not create subject matter jurisdiction over Plaintiff Acuity's claim for relief. 28 U.S.C. § 2201(a) is a procedural statute that allows the court to issue declaratory judgments when other grounds for subject matter jurisdiction exist. Wombat Acquisitions avers that the Court should not exercise subject matter jurisdiction over this action, because the exercise of such jurisdiction to effectively overturn decades of clearly established Missouri state law unduly interferes with state court prerogatives and principles of comity.

10. Wombat Acquisitions **admits** the averments contained in paragraph 10 of the Second Amended Complaint.

11. Wombat Acquisitions **admits** the averments contained in paragraph 11 of the Second Amended Complaint.

**Facts Common to All Counts**

12. Wombat Acquisitions **admits** the averments contained in paragraph 12 of the Second Amended Complaint.

13. Wombat Acquisitions **admits** the averments contained in paragraph 13 of the Second Amended Complaint.

14. Wombat Acquisitions **admits** the averments contained in paragraph 14 of the Second Amended Complaint insofar as they allege that the Policy provides property damage coverage for the Covered Property. As to the policy language quoted in the unnumbered block following paragraph 14 of the Second Amended Complaint, Wombat Acquisitions **admits** that the quoted language appears in the Policy at Section L(2) of the Missouri Changes endorsement, but **denies** that such provision operates to void a post-loss assignment of insurance benefits under clearly established Missouri law.

15. Wombat Acquisitions **admits** the averments contained in paragraph 15 of the Second Amended Complaint.

16. Wombat Acquisitions **admits** the averments contained in paragraph 16 of the Second Amended Complaint.

17. Wombat Acquisitions **denies** the averments contained in paragraph 17 of the Second Amended Complaint.

18. Wombat Acquisitions **denies** the averments contained in paragraph 18 of the Second Amended Complaint. While Wombat Acquisitions does not dispute that Acuity has made payments totaling approximately $1,050,974.97 on the Claim, Wombat Acquisitions **denies** that only a balance of $128,159.30 remains on the repair estimate.

19. Wombat Acquisitions **admits** the averments contained in paragraph 19 of the Second Amended Complaint.

20. Wombat Acquisitions **admits** the averments contained in paragraph 20 of the Second Amended Complaint.

21. Wombat Acquisitions **admits** the averments contained in paragraph 21 of the Second Amended Complaint.

22. Wombat Acquisitions **denies** the averments contained in paragraph 22 of the Second Amended Complaint.

23. Wombat Acquisitions **admits** the averments contained in paragraph 23 of the Second Amended Complaint.

24. Wombat Acquisitions **admits** that a representative from Wombat contacted Acuity on June 15, 2024, and made demands for payment under the policy. Wombat Acquisitions **denies** any other averment contained within paragraph 24 of the Second Amended Complaint.

25. Wombat Acquisitions **admits** that it retained a contractor to perform the repairs. Wombat Acquisitions **denies** all other averments contained within paragraph 25 of the Second Amended Complaint.

26. Wombat Acquisitions **denies** the averments contained in paragraph 26 of the Second Amended Complaint. Wombat Acquisitions' demand was for $9,250,277.77 under the appraisal, and included an additional amount for the installation of a temporary roof that would facilitate limited use of the facility while undertaking complete repairs.

### COUNT I: DECLARATORY JUDGMENT

27. Defendant Wombat Acquisitions incorporates by reference their above responses to paragraphs 1 through 26 of the Second Amended Complaint as if fully set forth herein.

28. Defendant states that the averments contained in Paragraph 28 of the Second Amended Complaint consist only of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the same.

29. Defendant states that the averments contained in Paragraph 29 of the Second Amended Complaint consist only of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the same.

30. Defendant states that the averments contained in Paragraph 30 of the Second Amended Complaint consist only of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the same.

**AFFIRMATIVE DEFENSES**

COMES NOW Defendant Wombat Acquisitions, LLC ("Wombat") and for its affirmative defenses to Plaintiff Acuity, A Mutual Insurance Company's ("Acuity") Second Amended Complaint, states and alleges as follows:

33. Defendant Wombat incorporates by reference their answers and replies to Plaintiff Acuity's Second Amended Complaint as if set forth fully herein.

34. At all times relevant to the case, Defendant Wombat and Co-Defendants Lora Property Investments LLC and Riverdale Packaging Company LLC acted in full and complete compliance with all applicable terms and conditions for making a claim under the policy at issue.

35. Plaintiff Acuity's Second Amended Complaint fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) in that the requested declaration beneficial to Plaintiff Acuity is barred by clearly established Missouri law concerning post-loss assignments of benefits and does not fit within any exception to that general rule.

36. Plaintiff Acuity's request for declaratory relief is barred by the doctrine of unclean hands in that Plaintiff Acuity has acted vexatiously and without cause to deny Defendant Wombat's claim in violation of Missouri law.

37. Plaintiff Acuity's request for declaratory relief is effectively an affirmative defense to Defendant Wombat's counterclaim for vexatious refusal to pay, a Missouri state law cause of action, and therefore fails to state a claim upon

which relief can be granted or in the alternative that the court should abstain from deciding.

38. Plaintiff Acuity's request for declaratory relief is a request that the court overturn clearly established Missouri state law, and the Court should abstain from the exercise of subject matter jurisdiction notwithstanding the effect of Defendant Wombat's counterclaim below.

39. To the extent that Defendant Wombat can sustain a counterclaim against Plaintiff Acuity, the parties are non-diverse and the court is without subject matter jurisdiction for this matter.

40. Plaintiff Acuity's requested relief is barred by the doctrines of waiver and estoppel. Plaintiff Acuity had actual knowledge of the proposed sale well in advance of its occurrence and made no effort to prevent the sale, and Defendant Lora Investment and Defendant Wombat relied upon this representation to their detriment.

41. Defendant Wombat acted at all times in due care, with good faith and in the absence of malice or ill will.

42. Defendant Wombat provides notice to the court that it intends to rely upon the statutory protections applicable to first party claimants described at Mo. Rev. Stat. § 375.420 and Mo. Rev. Stat. §§ 375.1000 – 375.1018.

43. Plaintiff Acuity's claims are frivolous, unreasonable and wholly without merit, justifying the award of attorney's fees to Defendant Wombat Acquisitions.

44. Defendant Wombat Acquisitions denies each and every averment of Plaintiff Acuity's Second Amended Complaint not specifically admitted in its Answer.

**WHEREFORE**, having fully answered Plaintiff's Second Amended Complaint, Defendant Wombat moves this Honorable Court for its Order of Dismissal with Prejudice at Plaintiff's cost, and for any further relief deemed just and reasonable under the circumstances.

## COUNTER-CLAIM OF WOMBAT ACQUISITIONS LLC

COMES NOW, Defendant and Counter-Claim Plaintiff Wombat Acquisitions LLC ("Wombat"), and for its Counter-Claim against Plaintiff and Counter-Claim Defendant Acuity, A Mutual Insurance Company ("Acuity") states and alleges as follows:

### Parties and Jurisdiction

1. This Court has jurisdiction over this counterclaim solely because of 28 U.S.C. § 1367. Jurisdiction exists now only because Plaintiff and Counter-Claim Defendant Acuity has asserted a claim pursuant to 28 U.S.C. § 2201(a) requesting declaratory relief.

2. This action is a direct action against an insurance company within the meaning of 28 U.S.C. § 1332(c)(1), and to the extent Co-Defendant Lora Property Investments LLC has been joined as a necessary party, the parties are non-diverse.

3. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to the transactions at issue occurred in St. Louis, Missouri.

### Facts

**The Policy, the covered loss, and Acuity's fixed liability**

4. On or about September 20, 2023, Acuity issued commercial property insurance Policy No. ZS1914 to William Nottke (now deceased), as president and owner of Riverdale Packaging Corporation (the "Policy"). The Policy was in force through August 22, 2024.

5. Riverdale owned the building at 4501 Gustine Avenue, St. Louis, Missouri 63116 (the "Covered Property").

6. The Policy declared a coverage limit of $9,852,586 for the Covered Property.

7. The Policy provided that:

**A. COVERAGE** We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

8. On January 20, 2024, an exterior water pipe burst at the Covered Property, and the resulting weight of water, ice, and snow collapsed a portion of the building's roof — a Covered Cause of Loss. Acuity's obligation to pay for that loss became fixed at the moment the loss occurred.

9. On January 21, 2024, William Nottke gave Acuity prompt notice of the loss, in full compliance with the Policy.

**Acuity's carrier-controlled investigation and undervaluation of the loss**

10. Acuity assigned the claim to its adjuster, Dave Jostes, on January 23, 2024, and accepted the claim as covered.

11. Acuity retained every professional on the claim itself — a remediation contractor, a building consultant, and a structural engineer. None of these professionals worked for the insured, and Acuity's building consultant never spoke with the insured.

12. On or about February 5, 2024, Acuity's own analysis identified approximately $3.2 million in building-code-upgrade costs that repairing the loss would trigger. Acuity did not disclose to its insured that the Policy provided only a $60,000 sublimit for that exposure.

13. Acuity's retained structural engineer later expanded the necessary repair scope by approximately 100 percent, identifying additional deflected structural trusses. Acuity did not revise its repair estimate or increase its reserves to account for that expanded scope.

14. Acuity's building-repair estimate of approximately $1,179,293 was expressly preliminary. It excluded the approximately $3.2 million in code-related costs, excluded fire-suppression damage beyond the immediate collapse footprint,

and was prepared without the insured's agreement. Acuity never prepared a revised estimate.

15. Acuity paid a total of $1,050,974.97 toward the claim, principally for limited work addressing immediate safety concerns, all issued to Riverdale. None of these payments funded a completed repair of the building; the structural damage caused by the roof collapse remained unrepaired.

16. The gap between what Acuity would pay and what repairing the Covered Property required was part of the reason William Nottke elected to sell the property to Wombat.

**Acuity rejects the assignment before reading its own Policy or consulting counsel**

17. On or about May 16–17, 2024, Riverdale (together with Co-Defendant Lora Property Investments, LLC) contracted to sell the Covered Property to Wombat, and Riverdale assigned to Wombat the insurance benefits arising from the loss.

18. On May 24, 2024, Acuity's adjuster learned that the purchaser would take an assignment of the insurance claim. That same day — before consulting counsel, before locating any anti-assignment provision in the Policy, and without knowing the governing Missouri law — Acuity rejected the assignment.

19. Acuity's contemporaneous, stated reason was financial, not legal. Its adjuster recorded that "[t]here's no benefit of us accepting the assignment" and "[t]here's only downside," reasoning that the "only potential" of working with the purchaser was that "they would ask for more money."

20. When it rejected the assignment, Acuity's adjuster had not located any anti-assignment language in the Policy. He recorded that he "looked in the policy" and "didn't find anything restricting assignment," and asked his supervisor to "take a look." He later testified that he had done "a search" but "only just

searched one word" and "didn't actually go through the policy," and he agreed that he "decided to reject the assignment without knowing whether Missouri law had any impact on the enforceability of the anti-assignment provision."

21. Only four days later, on or about May 28, 2024, did an Acuity supervisor first locate the anti-assignment provision in the Policy and route the Policy and the assignment to Acuity's outside counsel for review.

22. Acuity continued to reject the assignment through at least June 17, 2024 — before it had received any legal opinion. The first legal opinion reflected in Acuity's file is dated June 20, 2024, after Acuity had already made and maintained its decision to reject for nearly a month.

**The post-loss assignment, and Acuity's after-the-fact reliance on the anti-transfer clause**

23. The sale of the Covered Property to Wombat closed on or about June 11, 2024. What Riverdale assigned to Wombat was the matured right to the insurance proceeds of a loss that had already occurred — a post-loss assignment of a claim, not a transfer of the Policy.

24. Riverdale and Wombat notified Acuity of the post-loss assignment, and Wombat asked Acuity to direct all claim payments and communications to Wombat.

25. Only after it had already decided to reject the assignment did Acuity assert, as a justification, the Policy's anti-transfer provision appearing at Section L(2) of the Missouri Changes endorsement:

**2. Transfer By Other Means Following Death.** If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties, but only with respect to that property. Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

26. That provision does not bar a post-loss assignment of a matured insurance claim. As the Missouri Court of Appeals held in *Bowden v. Am. Mod. Home Ins. Co.*, 658 S.W.3d 86 (Mo. Ct. App. 2022), an assignment made after the event on which liability is predicated does not violate a policy provision prohibiting assignment. Wombat so advised Acuity.

**The insured's signed appraisal demand — received, then ignored and destroyed**

27. When the parties did not agree on the amount of the loss, the insured invoked the Policy's appraisal clause. On June 11, 2024, William Nottke — Acuity's own named insured — signed a formal written demand for appraisal under the Policy.

28. On June 21, 2024, the signed appraisal demand was emailed to Acuity's adjuster at his Acuity email address.

29. Acuity received the appraisal demand. Acuity's designated corporate representative has admitted that the June 21, 2024 email went to the adjuster's inbox, that Acuity's own information-technology department confirmed the email was received, and that the demand remained in Acuity's possession for more than thirty days before Acuity responded. Acuity's own rejection correspondence acknowledged that "we also received an email with an appraisal demand."

30. Acuity never named an appraiser in response to the demand — contrary to the Policy and, as Acuity's corporate representative admitted, contrary to Acuity's own practice of responding to appraisal demands within the time the Policy requires.

31. The email that carried the appraisal demand was then destroyed. Acuity's adjuster maintained a rolling twenty-one-day email auto-deletion practice, with no litigation hold, that would have destroyed the demand email on or

about July 12, 2024. Acuity's corporate representative admitted that the adjuster violated Acuity's policy both by failing to respond to the demand and by deleting it.

32. Acuity did not formally reject the appraisal demand until July 22, 2024 — after the demand had been in Acuity's possession for more than thirty days and after the email documenting it had been destroyed — and then rejected it as purportedly premature.

**The undervaluation, the payment upon threat, and payments that funded no completed repair**

33. On or about August 3, 2024, Wombat submitted its estimate of the covered loss, which totaled $9,250,277.77 — nearly nine times the amount Acuity had paid.

34. Acuity withheld the balance of the claim for months. On or about August 13, 2024, after Wombat's representative alleged vexatious refusal and threatened suit, Acuity sent Riverdale the single largest payment in the claim's history — $836,124.37 (check no. 14022814) — a payment for which Acuity's Vice President of Claims approved an unusual reserve increase.

35. A $200,000 advance Acuity had issued on February 28, 2024 for building repair was, by Acuity's own consultant's determination, largely unearned: only $100,242.81 of reconstruction work was ever invoiced against it, leaving $99,757.19 that Acuity's own file marked "to refund," pending — an amount the record does not show Acuity ever recovered.

36. Acuity's payments funded only emergency water mitigation — not construction. Acuity's vendor performed water extraction, drying, and demolition to stabilize the structure, but the vendor never structurally reconstructed the building. The vendor did no further billable work after March 14, 2024, and the building was never rebuilt; the structural damage caused by the roof collapse remains unrepaired to this day.

**Acuity deemed a child's wading pool an adequate way to protect the building**

37. Throughout the claim, Acuity represented that its vendors' efforts to protect the building from further damage after the loss were adequate. Acuity's own claim file recorded that "[m]itigation [was] completed" and that "[t]emporary walls and roof repairs [were] complete," and Acuity's adjuster testified that he "had no issue" with the temporary protective measures and regarded them as an "adequate remedial measure."

38. The "temporary protective measure" Acuity deemed adequate was a child's wading pool. To collect the rainwater falling through the open roof, Acuity's mitigation vendor placed an above-ground children's swimming pool in the middle of the building, ran tarps to funnel the rain into it, and used a pump to discharge the water out a window. The vendor's own invoice billed the device as a "16 ft Oval Oasis Designer Pool, Above Ground Frame Swimming Pool … Age 6 & up," at a cost of $298.00. Acuity's adjuster testified that, even as of May 2024 — months after the loss — "still having that kiddie pool was an adequate remedial measure."



*Figure 1. The above-ground children's frame pool Acuity's mitigation vendor placed on the warehouse floor directly beneath the open roof to collect rainwater falling into the building — with tarps strung overhead to funnel the rain into the pool and a pump to discharge it out a window. This remained the building's "temporary protective measure" when Wombat purchased the Covered Property in June 2024.*

**Acuity's shifting rationales, and the amount owed**

39. Acuity never issued a reservation-of-rights letter citing the anti-transfer clause. Rather than deny the claim, Acuity filed this affirmative declaratory-judgment action.

40. In its sworn interrogatory answers, Acuity identified only three grounds for its refusal — that the assignment violated Policy language, that it was against public policy, and that Acuity had not consented. None of those grounds mentioned any failure to submit a sworn proof of loss.

41. Acuity did not advance a proof-of-loss rationale to justify withholding appraisal until later — in its corporate representative's deposition, and then in its February 11, 2026 summary-judgment briefing — a rationale that appears nowhere in Acuity's 2024 claim decision or in its declaratory-judgment complaint.

42. By the post-loss assignment, Wombat holds Riverdale's right to the insurance proceeds of the loss, including the right to bring an action under Mo. Rev. Stat. § 375.420 and the protections afforded first-party claimants under Mo. Rev. Stat. §§ 375.1000 – 375.1018. Acuity has paid $1,050,974.97, substantially less than the amount owed for the covered loss.

43. Acuity acted with actual knowledge that the post-loss assignment to Wombat was valid and enforceable notwithstanding the anti-transfer clause, and with malice toward Wombat, which had lawfully purchased the Covered Property and the right to the claim for the mutual benefit of itself and Co-Defendant Lora Property Investments LLC (through its then-member, William Nottke).

### COUNT I: BREACH OF CONTRACT

44. Wombat incorporates by reference the preceding paragraphs of its Counterclaim as if fully set forth herein.

45. The Policy is a valid and enforceable contract of insurance. The January 20, 2024 roof collapse was a Covered Cause of Loss, notice was timely given, and the insured complied with the Policy's conditions.

46. By the post-loss assignment of benefits, Wombat holds Riverdale's right to the insurance proceeds payable for the loss.

47. Acuity breached the Policy by failing to pay the full amount of the covered loss and by refusing to participate in the appraisal the Policy provides as the mechanism for determining the amount of loss.

48. As a direct and proximate result of Acuity's breach, Wombat has been damaged in the amount of the unpaid covered loss — an amount to be proven at trial, but not less than the difference between the covered loss and the $1,050,974.97 Acuity has paid — together with prejudgment interest.

**WHEREFORE**, Counter-Claim Plaintiff Wombat Acquisitions LLC prays this Honorable Court enter judgment in its favor and against Acuity on Count I for the unpaid amount of the covered loss, together with prejudgment interest, costs, and such further relief as the Court deems just and proper.

## COUNT II: VEXATIOUS REFUSAL TO PAY (Mo. Rev. Stat. § 375.420)

49. Wombat incorporates by reference the preceding paragraphs of its Counterclaim as if fully set forth herein.

50. As the valid post-loss assignee of the claim, Wombat holds the right to bring this action under Mo. Rev. Stat. § 375.420 and to invoke the protections afforded first-party claimants under Mo. Rev. Stat. §§ 375.1000 – 375.1018 and the regulations implementing them.

51. Acuity refused to pay the loss without reasonable cause or excuse, on two independent grounds:

  a. **Theory One — vexatious refusal to honor the assignment.** Acuity rejected the assignment on the same day it learned of it, for stated financial reasons, before reading its own Policy, before consulting counsel, and without knowing Missouri law; it located the anti-transfer clause only days later and obtained a legal opinion only after its decision had already been made and maintained; and no Missouri court has enforced an anti-transfer clause to bar a post-loss assignment of a matured claim.

  b. **Theory Two — vexatious refusal to pay the full amount of the loss.** Acuity conducted a carrier-controlled investigation, solicited no

independent trade bids, treated a preliminary estimate as final, excluded from that estimate the code-related costs and fire-suppression damage it had itself identified, refused the insured's signed and received appraisal demand while the email documenting it was destroyed, and made its largest payment only upon a threat of suit — all while its payments funded no completed repair of the building.

52. Mo. Rev. Stat. § 375.1007(4), (5), (7), (12) and (15) provide that the following are improper claims practices:

   a. (4): Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear;

   b. (5): Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them;

   c. (7): Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed and communicated to the insurer;

   d. (12): Failing in the case of claims denial or offers of a compromise settlement to promptly provide a reasonable and accurate explanation of the basis for such actions;

   e. (15): Failing to promptly settle claims where liability has become reasonably clear under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

53. Acuity refused to pay without reasonable cause or excuse, and engaged in improper claims practices, in at least the following ways:

a. Deciding to refuse the assignment before investigating its own Policy or the governing Missouri law, and adhering to that decision before obtaining any legal advice;

b. Advancing shifting, after-the-fact justifications for its refusal — first a financial rationale, then the anti-transfer clause, and finally, in litigation, a proof-of-loss rationale that appeared in none of its sworn claim-decision grounds and in none of its pleadings;

c. Receiving the insured's signed appraisal demand, failing to respond to it for more than thirty days, never naming an appraiser, and destroying the email that documented the demand under a rolling auto-deletion practice maintained with no litigation hold;

d. Investigating the loss solely through vendors Acuity itself retained, soliciting no independent electrician, plumber, or fire-suppression bid, and never re-pricing the loss after its own engineer expanded the repair scope by approximately 100 percent;

e. Treating a preliminary estimate as final and excluding from it the code-related costs and fire-suppression damage Acuity itself had identified, thereby undervaluing the covered loss and offering substantially less than the amount owed;

f. Failing to disclose to its insured that the Policy limited code-upgrade coverage to $60,000 against a code exposure Acuity itself valued at approximately $3.2 million;

g. Paying a large, largely unearned advance to its own vendor while refusing the insured's appraisal request, and making its single largest claim payment only after Wombat threatened suit;

h. Performing no structural repair of the building while representing that its vendors' temporary measures — including a child's wading pool

placed inside the building to catch rainwater — adequately protected the property from further damage;

i. Refusing to communicate with Wombat as the valid assignee and instead dealing directly with the assignor in an effort to resolve the claim for substantially less than it was worth; and

j. Such further acts as may be revealed during the course of discovery.

54. As a direct and proximate result of Acuity's willful, intentional, and vexatious refusal to pay, Wombat has been unable to repair or make productive use of the Covered Property and has been compelled to litigate to recover amounts due under the Policy, incurring loss, attorney's fees, and costs.

**WHEREFORE**, Counter-Claim Plaintiff Wombat Acquisitions LLC prays this Honorable Court enter judgment in its favor and against Acuity on Count II for the amount of the loss, for the statutory penalty and a reasonable attorney's fee pursuant to Mo. Rev. Stat. § 375.420, for its costs, and for such further relief as may be just and proper under the premises.

Respectfully submitted,

**OTT LAW FIRM**

____/s/ Joseph A. Ott_____
Joseph A. Ott, #67889
75 W. Lockwood Avenue
Webster Groves, MO 63119
Telephone: (314) 293-3756
Facsimile: (314) 689-0080
joe@ott.law
*Attorneys for Defendant Wombat Acquisitions LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 3, 2026, the foregoing document was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send a notification of such filing to all counsel of record, including:

**Michael W. Shunk**
**James R. Jarrow**
Baker Sterchi Cowden & Rice LLC
2400 Pershing Road, Suite 500
Kansas City, Missouri 64108
mshunk@bakersterchi.com
jarrow@bakersterchi.com
*Attorneys for Plaintiff Acuity, A Mutual Insurance Company*

**Zachary R. McMichael**
**Elizabeth Wood McKown**
Capes Sokol
mcmichael@capessokol.com
mckown@capessokol.com
*Attorneys for Defendants Riverdale Packaging Corporation and Lora Property Investments LLC*

**Jeremy D. Hollingshead**
jhollingshead@hdtriallawyers.com


_____/s/ Joseph A. Ott_____