**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>RIVERDALE PACKAGING CORP., et al.<br><br>Defendants. | ) | Case No.: 4:24-cv-01277-MTS |

**CROSSCLAIM PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Defendants/Crossclaim Plaintiffs Riverdale Packaging Corporation ("Riverdale") and Lora Property Investments, LLC ("Lora") (together, "Riverdale and Lora"), by and through their undersigned counsel, for their Memorandum of Law in Support of Their Motion to Enforce Settlement Agreement, state as follows:

## Introduction

Riverdale and Lora and Defendant/Crossclaim Defendant Wombat Acquisitions, LLC ("Wombat") reached a complete settlement of Riverdale and Lora's crossclaim through an exchange of emails between counsel in July and August 2026. Riverdale and Lora's counsel stated the terms; Wombat's counsel responded, "We are all agreed on this"; Wombat approved the form of consent judgment that Riverdale and Lora's counsel prepared; Wombat's counsel confirmed, "My client approved"; and the parties exchanged payment instructions. Every essential term was fixed. All that remained was Wombat's ministerial performance — payment of an agreed sum and consent to a judgment it had already approved. Wombat has refused to perform. Missouri law does not permit a party to walk away from a settlement it made simply because it later declines to pay.

For the reasons that follow, and because Riverdale and Lora are ready, willing, and able to perform their own remaining obligation, the Court should enforce the settlement.

**Factual Background**

1. This action arises from Plaintiff Acuity, A Mutual Insurance Company's ("Acuity") declaratory-judgment suit against Riverdale and Lora. Riverdale and Lora, in turn, asserted a crossclaim against Wombat under Federal Rule of Civil Procedure 13(g), arising from an Insurance Benefits Assignment Agreement dated June 11, 2024 (the "Agreement"), under which Wombat agreed to "defend and indemnify" Riverdale and Lora and to "save [them] harmless from and against any and all claims, costs, or expenses (including attorney fees)" arising from Wombat's pursuit of insurance proceeds. The crossclaim pleads Count I for contractual indemnity and Count II, in the alternative, for restitution.

2. On July 21, 2026, Riverdale and Lora's counsel wrote that Riverdale and Lora would complete the sworn statement of loss on two (2) conditions: (1) a payment from Wombat of $25,525.00 for Riverdale and Lora's attorneys' fees through May 31, 2026, "pursuant to the Agreement"; and (2) "a consent judgment as to liability on Count I and waiver of jury trial on damages on that count," with Riverdale and Lora to "ask the Court to voluntarily dismiss Count II." (Ex. A.)

3. The following day, July 22, 2026, Wombat's counsel accepted: "We are all agreed on this. Please send over proposed language for the proposed consent judgement." (Ex. B.)

4. On July 24, 2026, Riverdale and Lora's counsel circulated a draft consent judgment. On July 29, 2026, Wombat's counsel confirmed the draft and Wombat's assent: "That looks good to me Zach. My client approved yesterday." (Ex. C.)

5. On August 5, 2026, Riverdale and Lora's counsel advised that, with a few additional hours of work in June and July 2026, the total attorneys' fees and costs through July 31, 2026 were $29,090.50, and asked Wombat to confirm that it was sending payment. Wombat's counsel responded the same day: "Ok. Lets get you paid how?" (Ex. D.)

6. On August 6, 2026, Riverdale and Lora's counsel sent Wombat wire instructions and a client number for the transfer, stating that upon receipt he would deliver the signed sworn statement of loss and file the consent judgment. Wombat's counsel confirmed that he had forwarded the instructions to his client and would follow up. (Ex. E.)

7. On August 14, 2026, Riverdale and Lora's counsel reported that no payment had been received. Wombat's counsel replied that he had "been told the bill is being paid" and had resent the invoice. (Ex. F.) Payment has not been made, and Wombat has not performed.

8. Riverdale and Lora are presently in possession of a fully executed copy of the sworn statement of loss and are ready, willing, and able to deliver it to Wombat immediately upon Wombat's compliance with the settlement.

**Standard**

When a settlement agreement's terms are clear and unambiguous, a federal district court has the inherent power to enforce it as a matter of law. *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999); *Miess v. Port City Trucking, Inc.*, No. 4:09CV1124 CDP, 2012 WL 401050, at *3 (E.D. Mo. Feb. 8, 2012). Basic contract-law principles govern the enforcement of a settlement agreement. *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006). Because the Court's jurisdiction over the crossclaim rests on diversity of citizenship and supplemental jurisdiction, Missouri substantive law — "which includes its law respecting the proper burden of proof" — governs whether an enforceable settlement exists. *Visiting Nurse Ass'n, St. Louis v.*

*VNAHealthcare, Inc.*, 347 F.3d 1052, 1053 (8th Cir. 2003). A motion to enforce a settlement "adds to the underlying case a collateral action seeking specific performance of the agreement," and the moving party must prove the existence of the agreement "by clear, convincing and satisfactory evidence." *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. banc 2007); see also *Schumacher v. SC Data Ctr., Inc.*, 728 S.W.3d 576, 586 (Mo. App. W.D. 2025) (*citing Vulgamott v. Perry*, 154 S.W.3d 382, 388 (Mo. App. W.D. 2004)). Riverdale and Lora readily meet that burden here.

## Argument and Analysis

### I. Riverdale and Lora and Wombat Formed a Complete and Binding Settlement Agreement.

Under Missouri law, "[s]ettlement agreements are contracts and subject to contract law." *Matthes v. Wynkoop*, 435 S.W.3d 100, 107 (Mo. App. W.D. 2014) (internal citation omitted). To establish a valid settlement, a party must prove "the essential elements of a contract: offer, acceptance and consideration," together with "a meeting of the minds." *Id.* Whether the parties reached a meeting of the minds turns on "the objective manifestations of the parties," not their subjective or secret intentions. *Id.* A meeting of the minds does not require that the parties "entertain the same subjective views"; a court "looks to the parties' objective manifestations of intent and interprets those manifestations as a reasonable person would," and "[i]f those manifestations produce a reasonably ascertainable objective meaning, an enforceable agreement exists." *Visiting Nurse Ass'n*, 347 F.3d at 1054. Because Missouri public policy favors the settlement of litigation, "courts will generally enforce settlement agreements when warranted." *Woodson v. Bank of Am., N.A.*, 602 S.W.3d 316, 323 (Mo. App. E.D. 2020).

Each element is satisfied. Riverdale and Lora's counsel made a definite offer on July 21, 2026, stating the precise terms on which Riverdale and Lora would resolve the crossclaim. (Ex.

A.) Wombat accepted those terms without qualification the next day: "We are all agreed on this." (Ex. B.) Consideration is present because each side gave up something of value — Wombat agreed to pay fees and to consent to judgment on Count I, and Riverdale and Lora agreed to dismiss Count II and to provide the sworn statement of loss. The compromise of a disputed claim is, by itself, sufficient consideration: a party's "agreement to compromise an honestly disputed claim is sufficient valuable consideration to support a contract, even if it is later determined that the claim lacked merit." *Schumacher*, 728 S.W.3d at 586. The parties' objective manifestations — the offer, the express acceptance, the approval of a drafted consent judgment, and the exchange of payment instructions — establish a meeting of the minds.

**II. The Settlement Is Enforceable Even Though It Was Reached by Email and Never Reduced to a Single Signed Document.**

A settlement "does not have to be in writing unless the subject matter is within the statute of frauds," because "[a] contract is the agreement . . . parties [make] and not the writing which evidences the agreement." *Matthes*, 435 S.W.3d at 107 (internal citation omitted). A "compromise settlement need not be in writing" absent the statute of frauds, and "merely because parties stipulate they will reduce [an] oral agreement to writing does not indicate [an] intention that [the] parties will require [a] writing as [a] condition precedent to being bound." *Vulgamott v. Perry*, 154 S.W.3d 382, 388 (Mo. App. W.D. 2004) (internal citation omitted). Missouri courts enforce settlements formed through counsel's correspondence. In *Woodson*, a binding settlement was formed when one attorney emailed a memorandum of terms and opposing counsel "responded with a one-word email: 'Agreed.'" *Woodson*, 602 S.W.3d at 323-2.

The email record here is far more complete than a one-word assent. Riverdale and Lora's counsel set out the terms in writing (Ex. A); Wombat's counsel accepted in writing (Ex. B); the

parties exchanged a draft consent judgment (Ex. C); and the payment mechanics were papered by email (Ex. D & E). No writing beyond this correspondence was legally required.

Nor does the absence of Wombat's "executed version" of the consent judgment matter. Wombat's counsel confirmed on July 29, 2026 that Wombat had already approved the settlement: "My client approved yesterday." (Ex. C.) Under Missouri's agency principles, an attorney's communication of a client's authorized assent binds the client, and a client who later "change[s] her mind and refuse[s] to sign the document" cannot escape the settlement. *Matthes*, 435 S.W.3d at 109-110. "[N]o court should countenance an announced settlement between counsel followed by escape therefrom." *Id.* at 110. A party's later dissatisfaction is likewise irrelevant: "the fact that a party decides after the fact that a contract is not to its liking does not provide a reason to suppose that a contract was not in fact formed or to release that party from its obligation." *Visiting Nurse Ass'n*, 347 F.3d at 1055.

**III. The Parties Agreed on Every Essential Term.**

To be enforceable, a settlement's essential terms must be "sufficiently definite to enable the court to give them exact meaning," but "[a] contract will be valid and enforceable even if some terms may be missing or left to be agreed upon" so long as that definiteness is met. *Vulgamott*, 154 S.W.3d at 390. The fact that the parties leave some details for counsel to work out through further negotiation, "cannot be used to abrogate an otherwise valid agreement." *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997). Which terms are "essential" depends on "'the agreement and its context.'" *Matthes*, 435 S.W.3d at 107 (*quoting Shellabarger v. Shellabarger*, 317 S.W.3d 77, 82 (Mo. App. E.D. 2010)).

Here, the essential terms were all fixed: the money (Wombat's payment of Riverdale and Lora's attorneys' fees), the consent judgment (liability on Count I and waiver of jury trial on

damages), the dismissal of Count II, and the delivery of the sworn statement of loss. (Ex. A.) Wombat did not merely agree in the abstract; it approved the specific form of consent judgment that Riverdale and Lora drafted. (Ex. C.) That the parties contemplated an "executed version" of that consent judgment to be filed later does not condition the settlement on signature. A provision that a "[s]ettlement [is] to be completed in [a] final settlement agreement" is not an essential term and does not defer formation; "[t]he mere fact that parties contemplate a formal written draft of their agreement at a later time is not sufficient in itself to demonstrate that they did not intend to be bound." *Woodson*, 602 S.W.3d at 326 (citation omitted). Where the parties "left no essential terms to be negotiated in the future," a later failure to sign a more formal document "did not undo the parties' original . . . agreement." *Schumacher*, 728 S.W.3d at 589-90.

The update to the fee figure — from $25,525.00 through May 31, 2026, to $29,090.50 through July 31, 2026 — does not introduce indefiniteness. The parties simply confirmed the current, precise amount of the very term they had already agreed upon: Wombat's payment of Riverdale and Lora's attorneys' fees "pursuant to the Agreement." (Ex. A; Ex. C.) Wombat accepted that updated figure without objection and asked how to pay it: "Ok. Lets get you paid how?" (Ex. C.) The amount is fixed and certain.

**IV. Wombat's Failure to Pay Does Not Rescind or Repudiate the Settlement.**

"Once parties have settled a dispute and have agreed to settlement terms, the parties cannot rescind it." *Miess*, 2012 WL 401050, at *3 (internal citation omitted). A party repudiates a contract only "by manifesting, by words or conduct, a positive intention not to perform." JAS Apartments, Inc. v. Naji, 354 S.W.3d 175, 185 (Mo. banc 2011). "[M]ere requests to change the terms of a contract are not, in and of themselves, enough to constitute repudiation." *Woodson*, 602 S.W.3d at

325. Even "disagreements as to the language used to memorialize the agreement" are not a repudiation. *Vulgamott*, 154 S.W.3d at 392.

Wombat has never disavowed the settlement. To the contrary, its counsel represented that "the bill is being paid." (Ex. F.) Wombat's failure to fund the agreed payment is a breach of a settlement it made, not evidence that no settlement exists. The proper remedy is enforcement: when a court determines that a valid settlement agreement exists, "it may order the parties to execute a settlement release as a species of specific performance." *Miess*, 2012 WL 401050, at *3. The Court should order Wombat to pay the agreed sum and to consent to the entry of the judgment it already approved. For their part, Riverdale and Lora are ready, willing, and able to deliver the fully executed sworn statement of loss the moment Wombat performs.

**V. No Evidentiary Hearing Is Necessary Because the Material Facts Are Undisputed.**

An evidentiary hearing is warranted only "when there is a substantial factual dispute over the existence or terms of a settlement," and "this rule presupposes that there are essential issues of fact that can only be properly resolved by such a hearing." *Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251 (8th Cir. 1996). "There is no automatic entitlement to an evidentiary hearing simply because the motion concerns a settlement agreement." *Id.* Where there is "no substantial factual dispute over the settlement agreement," the Court may enforce it without a hearing. *Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.*, 528 F.3d 556, 561 (8th Cir. 2008).

The settlement here is documented entirely in the parties' own contemporaneous emails. The terms are unambiguous and the assent is in writing. Should Wombat manufacture a factual dispute regarding the existence or terms of the agreement, Riverdale and Lora respectfully request an evidentiary hearing so that those issues may be resolved.

## **Conclusion**

For the foregoing reasons, Riverdale and Lora respectfully request that the Court find the settlement agreement valid and enforceable, order Wombat to pay $29,090.50 within fourteen (14) days, direct the entry of the parties' agreed consent judgment on Count I and the dismissal of Count II upon Wombat's payment, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted:

**CAPES, SOKOL, GOODMAN & SARACHAN, P.C.**

By: */s/ Zachary R. McMichael*
Zachary R. McMichael, #68251(MO)
8182 Maryland Ave., Fifteenth Floor
St. Louis, Missouri 63105
(314) 721-7701 (telephone)
(314) 721-0554 (facsimile)
mcmichael@capessokol.com

***Attorneys for Defendants Riverdale Packaging Corporation and Lora Property Investments, LLC***

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all counsel of record for the parties on the date of filing via the Court's CM/ECF electronic filing system.

*/s/ Zachary R. McMichael*