**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY, | ) | |
| | ) | Case No.: 4:24-cv-01277-MTS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RIVERDALE PACKAGING CORP., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**CROSSCLAIM PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Defendants and Crossclaim Plaintiffs Riverdale Packaging Corporation ("Riverdale") and Lora Property Investments, LLC ("Lora") (together, "Riverdale and Lora"), by and through their undersigned counsel, for their Reply in Support of Their Motion to Enforce Settlement Agreement (the "Motion"), and in response to the Memorandum in Opposition (Doc. 134) (the "Opposition") of Defendant and Crossclaim Defendant Wombat Acquisitions LLC ("Wombat"), state as follows:

**Introduction**

Wombat does not deny the facts that decide this Motion. Its counsel wrote "We are all agreed on this." He approved the consent judgment Riverdale and Lora prepared, confirming "My client approved." He then asked "Ok. Lets get you paid how?" and accepted wire instructions for the agreed sum. Those are the objective manifestations of a completed settlement, and Missouri law enforces a settlement built on exactly that record.

Unable to deny the agreement, Wombat tries to recast it. Its two premises both fail. First, Wombat inverts the agreed order of performance. Riverdale and Lora never promised to hand over the executed sworn statement in proof of loss (the "Proof of Loss") and then hope to be paid; the parties agreed that Wombat would pay and consent to judgment first, and that Riverdale and Lora would deliver the executed Proof of Loss once payment was made. Wombat's complaint that it never received the Proof of Loss is a complaint about a condition that its own non-payment prevented — and that Wombat's recent payment has now satisfied. Once the consent judgment is entered, Riverdale and Lora are ready, willing, and able to provide the Proof of Loss. Second, Wombat misdescribes the docket. The crossclaim is not an orphan pleading filed without leave; Riverdale and Lora asserted it in their Amended Joint Answer to Acuity's Second Amended Complaint — the responsive pleading they were entitled to file once the Court granted Acuity leave to amend.

Since the parties finished briefing, Wombat has paid the agreed sum in full — performing the very obligation it now says was never agreed. That payment confirms the Settlement and leaves only the ministerial step Wombat already approved: entry of the parties' agreed consent judgment on Count I and dismissal of Count II. Riverdale and Lora have proved their settlement with Wombat (the "Settlement") by clear, convincing, and satisfactory evidence, and the Court should enforce it.

**Background**

The parties reached the Settlement through a short, fully documented exchange between counsel.

On July 21, 2026, Riverdale and Lora offered to resolve their crossclaim on two conditions: that Wombat pay Riverdale and Lora's attorneys' fees — then $25,525.00 through May 31, 2026, as the parties' Insurance Benefits Assignment Agreement (the "Agreement")

required — and that Wombat consent to a judgment on the crossclaim fixing liability on Count I, waiving a jury trial on damages, and dismissing Count II. (Ex. A.) The next day, July 22, 2026, Wombat accepted: "We are all agreed on this," and asked Riverdale and Lora to "send over proposed language for the proposed consent judgement." (Ex. B.)

On July 24, 2026, Riverdale and Lora sent Wombat the proposed consent judgment (the "Consent Judgment"). It fixed Wombat's consent to liability on Count I, waived a jury trial on damages, set a procedure for adjudicating the attorneys' fees recoverable under Count I, and dismissed Count II. (Ex. C.) On July 29, 2026, Wombat approved it: the proposed judgment "looks good to me," and "[m]y client approved yesterday." (Ex. D.) That same day, Riverdale and Lora confirmed that they held a fully executed Proof of Loss and would send it once payment was received. (Ex. D.) At Wombat's request, Riverdale and Lora later sent an unexecuted copy of the completed Proof of Loss so that Wombat could review it, while reiterating that the executed version would follow payment. (Doc. 134-7.)

The parties then turned to payment. On August 5, 2026, Riverdale and Lora advised that their fees and costs through July 31, 2026 totaled $29,090.50 and asked Wombat to confirm that payment was coming so that the executed Proof of Loss could be delivered. (Ex. D.) Wombat responded, "Ok. Lets get you paid how?" (Ex. D.) Riverdale and Lora offered payment by check, online, or wire and — after Wombat's counsel telephoned to request them — sent wire instructions on August 6, 2026. (Ex. E.) Wombat confirmed that it had forwarded the instructions to its client representative. (Ex. E.)

Payment never came. On August 14, 2026, Wombat told Riverdale and Lora that "the bill is being paid." (Ex. F.) On September 3, 2026, after still receiving nothing, Riverdale and Lora pressed again, and Wombat responded by demanding a detailed breakdown of the time entries

behind the agreed fees. (Doc. 134-10.) Riverdale and Lora agreed to provide the breakdown without waiving the Settlement or their right to move to enforce it, and set a final deadline of September 11, 2026. (Doc. 134-10.) When payment still did not arrive, Riverdale and Lora filed the Motion.

After the Motion was fully briefed, Wombat paid. On or about October 26, 2026, Wombat remitted the full $29,090.50 — the exact sum it had agreed to pay. (Ex. G., Wire Transfer Confirmation.) The condition on Riverdale and Lora's remaining performance will be satisfied once the consent judgment is entered. The approved consent judgment, only with the addition of counsels' signature blocks, is attached hereto as Exhibit H, so that the Court can enter it if it is inclined to grant Riverdale and Lora's Motion.

**Argument**

**I. The Parties Formed a Binding Settlement on Definite Terms.**

A settlement agreement is a contract, and Missouri contract law governs whether the parties formed one. *Matthes v. Wynkoop*, 435 S.W.3d 100, 107 (Mo. App. W.D. 2014). Formation requires offer, acceptance, consideration, and a meeting of the minds, measured not by the parties' private intentions but by their objective manifestations. *Id.*; *Woodson v. Bank of Am., N.A.*, 602 S.W.3d 316, 323 (Mo. App. E.D. 2020). Because Missouri public policy favors settlement, courts enforce a settlement whenever those elements are present. *Woodson*, 602 S.W.3d at 323.

Each element is present. Riverdale and Lora made a definite offer on July 21, 2026, stating the precise terms on which they would resolve the crossclaim. (Ex. A.) Wombat accepted without qualification the next day — "We are all agreed on this" — and then approved the very Consent Judgment Riverdale and Lora drafted. (Exs. B, D.) Consideration runs both ways:

Riverdale and Lora gave up their alternative restitution claim and their right to litigate Count I to judgment, and Wombat obtained a resolved crossclaim and an exit from the case. The compromise of a disputed claim is itself sufficient consideration. *Schumacher v. SC Data Ctr., Inc.*, 728 S.W.3d 576, 586-87 (Mo. App. W.D. 2025). On these objective manifestations, the parties reached a meeting of the minds. *Visiting Nurse Ass'n, St. Louis v. VNAHealthcare, Inc.*, 347 F.3d 1052, 1054 (8th Cir. 2003).

Wombat's contrary refrain — that "nothing was signed, no sum was fixed, and nothing was paid" (Doc. 134) — does not defeat enforcement. And events have overtaken its final premise: Wombat has since paid the agreed sum in full.

The sum was fixed. Riverdale and Lora stated the exact figure — $29,090.50 in fees and costs through July 31, 2026 — and Wombat answered, "Ok. Lets get you paid how?" (Ex. D.) That the figure rose from the $25,525.00 quoted through May 31, 2026 reflects only additional fees accruing on the same agreed term: Wombat's payment of Riverdale and Lora's fees under the Agreement. (Exs. A, D.) Confirming an accruing, ascertainable amount is not indefiniteness; a settlement is enforceable so long as its essential terms are definite enough to be given exact meaning. *Schumacher*, 728 S.W.3d at 588. The Consent Judgment's separate mechanism for adjudicating *future* indemnity does not make the Settlement payment uncertain; the $29,090.50 is a fixed, agreed sum resolving the fee demand through July 31, 2026, which Wombat agreed to pay. (Ex. C.)

No signature was required. Under Missouri law a settlement need not be in writing, and a court may enforce an agreement that contemplates the later execution of documents. *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006); *Matthes*, 435 S.W.3d at 107. "The mere fact that parties contemplate a formal written draft of their agreement at a later time is

not sufficient in itself to demonstrate that they did not intend to be bound." *Woodson*, 602 S.W.3d at 326. The parties' plan to enter the Consent Judgment later therefore did not condition the Settlement on anyone's signature.

The two cases Wombat invokes prove the point by contrast. In *DiSalvo Properties, LLC v. Hall*, the Missouri Court of Appeals reversed an order of specific performance because no settlement had ever been made: the terms were never announced to the court, the draft kept changing, and "no money was proffered," "collateral was not provided," no guaranty was signed, and "no party signed a written settlement agreement." 616 S.W.3d 502, 506 (Mo. App. E.D. 2020). The court found "no clear or convincing evidence of the terms of an oral settlement agreement" and "no evidence that [the defendant] agreed to be bound." *Id.* at 511. Here, the terms are fixed in the parties' emails, and Wombat supplied the very assent that was missing in *DiSalvo* — "We are all agreed on this," "[m]y client approved," and "Ok. Lets get you paid how?" (Exs. B, D.)

*American Recreation Products, LLC v. Tennier Industries, Inc.* is no closer. There, the parties had "agreed on a framework" only — one that "required written terms that could be discussed with their clients" — leaving "material issues that were never resolved," and their own draft notice said merely that they were "working on a settlement." 11 F. Supp. 3d 959, 966–67 (E.D. Mo. 2014). This record is the opposite: no term was left for future negotiation or client approval. Wombat's client had approved, the sum was stated and agreed to, and the Consent Judgment was drafted and accepted in form. The only thing left undone was Wombat's payment.

## II. The Parties Agreed That Wombat Would Pay and Consent First, and That Riverdale and Lora Would Then Deliver the Proof of Loss.

Wombat's lead argument is that Riverdale and Lora "cannot enforce a deal for a sworn proof of loss they have never delivered." (Doc. 134.) That argument depends on reversing the order of performance the parties set.

The emails fix that order. From the first message, delivery of the Proof of Loss was the last step, not the first: Riverdale and Lora would "complete the sworn proof of loss form and send it" only on the "two conditions" of payment and a consent judgment. (Ex. A.) Consistent with that sequence, Riverdale and Lora confirmed on August 5, 2026 that they held the executed Proof of Loss and would send it upon receipt of payment, and reaffirmed on August 6, 2026 that, "[o]nce I get it, I'll send you the signed sworn loss [and] file the consent judgment." (Exs. D, E.) Riverdale and Lora were at all times ready, willing, and able to deliver the executed Proof of Loss upon payment, and — now that Wombat has paid — are delivering it.

Wombat cannot build a defense on the non-occurrence of a condition that its own conduct controlled. Wombat did not receive the executed Proof of Loss earlier because it had not yet paid and the consent judgment entered — the event the parties made the trigger for delivery. The first condition is now satisfied: Wombat has paid, Riverdale and Lora will deliver the executed Proof of Loss once the Consent Judgment on Count I and dismissal of Count II is entered.

### III. The Settlement Rests on Independent Consideration, Defeating the Preexisting-Duty and First-Breach Arguments.

Wombat argues that the Agreement already required Riverdale and Lora to sign the Proof of Loss, so the promise to provide it added no consideration, and that Riverdale and Lora breached that duty first. (Doc. 134.) Both arguments miss the bargain.

The consideration for the Settlement was not the Proof of Loss; it was the compromise of a disputed crossclaim. In exchange for Wombat's payment and consent to judgment, Riverdale and Lora gave up their alternative restitution claim (Count II) and their right to litigate

contractual indemnity (Count I) to judgment. (Ex. C.) "A party's agreement to compromise an honestly disputed claim is sufficient valuable consideration to support a contract, even if it is later determined that the claim lacked merit." *Schumacher*, 728 S.W.3d at 586. That compromise is classic consideration, independent of any duty under the Agreement, so Wombat's preexisting-duty authorities have no purchase.

The first-to-breach rule fails for the same reason and one more. The rule bars a party from enforcing a contract it breached first, but only a *material* breach will do; a lesser breach supports at most a claim for damages, not rescission. *Deffenbaugh v. Burre*, 705 S.W.3d 127, 136 (Mo. App. W.D. 2025); *Guidry v. Charter Commc'ns, Inc.*, 269 S.W.3d 520, 531–32 (Mo. App. E.D. 2008). Riverdale and Lora breached nothing. As shown above, their duty to deliver the Proof of Loss was conditioned on Wombat's payment, and where performance is subject to such a condition, "a party is not required to perform until the other party makes a valid offer to perform." *Deffenbaugh*, 705 S.W.3d at 135. Wombat never paid, so Riverdale and Lora's duty to deliver never matured. Their non-delivery is no breach at all — let alone the prior, material breach the rule requires.

**IV. Wombat's Refusal to Pay Is a Breach of the Settlement, Not a Defense to It.**

Wombat devotes much of its Opposition to showing that it "has never disavowed the settlement" and "acted in good faith." (Doc. 134.) That is a concession, not a defense. A party that concedes it never disavowed the Settlement has conceded that one exists.

A completed settlement is not undone by a later reluctance to pay. "[M]ere requests to change the terms of a contract are not, in and of themselves, enough to constitute repudiation," and a party's after-the-fact dissatisfaction "does not provide a reason to suppose that a contract was not in fact formed or to release that party from its obligation." *Woodson*, 602 S.W.3d at 325;

*Visiting Nurse Ass'n*, 347 F.3d at 1055. Nor can Wombat disown its counsel's assent: an attorney's authority to settle is presumed from his statements and conduct, and the client bears the burden to rebut it. *Chaganti*, 470 F.3d at 1222. Counsel's confirmation that "[m]y client approved" binds Wombat, and "[n]o court should countenance an announced settlement between counsel followed by escape therefrom." *Matthes*, 435 S.W.3d at 110. Wombat's failure to pay was a breach of the Settlement, and the remedy is enforcement. Wombat's subsequent payment only deepens the point. By paying the agreed sum, Wombat performed and ratified the Settlement, and a party cannot "assume the inconsistent position of affirming a contract in part by accepting or claiming its benefits, and disaffirming it in part by repudiating or avoiding its obligations." *Barrow v. Booneville No. 1, Inc.*, 31 S.W.3d 90, 94 (Mo. App. W.D. 2000). Having paid the money the Settlement required, Wombat cannot disclaim the Consent Judgment it approved.

**V. The Agreed Sum Is a Negotiated Settlement Payment, Not a Fee Petition.**

Wombat argues that the fees are "unproven" and "partly outside the indemnity," invoking the standard that governs a contested fee petition. (Doc. 134.) That standard does not apply. The $29,090.50 is not a court-awarded fee; it is the sum Wombat agreed to pay to settle the crossclaim, and Wombat accepted it without objection. (Ex. D.) Riverdale and Lora are not required to “prove” their attorneys’ time because Wombat agreed to pay a set amount in settlement of Riverdale and Lora’s crossclaims.

**VI. The Crossclaim Is Properly Before the Court.**

Wombat's final argument — that the crossclaim "was never filed with the Court's leave" (Doc. 134) — is both wrong and beside the point, because no separate leave was required.

The docket Wombat recites shows why. On June 9, 2026, the Court granted Acuity leave to file its Second Amended Complaint — now the operative pleading — and denied Riverdale and Lora's earlier motion for leave to amend "as moot in light of the Second Amended Complaint." (Doc. 134 at 7.) The motion was moot because Acuity's new complaint entitled Riverdale and Lora to respond as of right. Under Rule 15(a)(3), a required response to an amended pleading is served within the time the Rule allows; it is not an "amendment" needing leave under Rule 15(a)(2). Riverdale and Lora filed that response — their Amended Joint Answer to the Second Amended Complaint — on June 11, 2026, and asserted their Rule 13(g) crossclaim within it. (Joint Answer.)

Courts agree that a party responding to an amended complaint may assert a new crossclaim in its answer without separately moving for leave. *See Tralon Corp. v. Cedarapids, Inc.*, 966 F. Supp. 812, 831–33 (N.D. Iowa 1997); *Digital Privacy, Inc. v. RSA Security, Inc.*, 199 F. Supp. 2d 457, 459 n.2 (E.D. Va. 2002); *Wagner v. Choice Home Lending*, 266 F.R.D. 354, 358 (D. Ariz. 2009); *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 100–01 (2d Cir. 2019). Wombat's reliance on Rule 16(b)(4) is therefore misplaced: that rule's good-cause standard governs a belated motion to amend filed after a scheduling deadline, *see Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008), not a response the Rules required Riverdale and Lora to file.

## VII. No Evidentiary Hearing Is Necessary.

Wombat asks, in the alternative, for an evidentiary hearing. None is needed. A district court "has inherent power to enforce a settlement agreement as a matter of law when the terms are unambiguous" and "considerable discretion in determining the procedure appropriate to a motion to compel settlement"; a hearing "need be held only if there are substantial questions of

fact that are not already a matter of record." *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999). The general rule that a hearing should be held when the existence or terms of a settlement are genuinely disputed "presupposes that there are essential issues of fact that can only be properly resolved by such a hearing," and there is "no automatic entitlement to an evidentiary hearing simply because the motion concerns a settlement agreement." *Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251 (8th Cir. 1996).

There is no such dispute here, and Wombat does not actually dispute the terms of the Settlement. The Settlement's existence and terms appear on the face of the parties' own emails, and Wombat does not deny that its counsel accepted the terms, approved the Consent Judgment, confirmed his client's approval, and asked how to pay. A party's after-the-fact dissatisfaction does not manufacture a factual dispute about whether the bargain was struck. *Visiting Nurse Ass'n*, 347 F.3d at 1055. Where the record reflects objective mutual assent to the material terms and no substantial factual dispute, the court may enforce the settlement on the record without a hearing. *Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.*, 528 F.3d 556, 562 (8th Cir. 2008). Wombat's payment of the agreed sum since briefing only confirms the absence of any genuine dispute. The Court can and should enforce the Settlement as a matter of law.

**Conclusion**

For these reasons, and those stated in the Motion, Riverdale and Lora respectfully request that the Court find the Settlement valid and enforceable; find that Wombat's payment of $29,090.50 has satisfied the Settlement's payment term; direct entry of the parties' agreed Consent Judgment on Count I and the dismissal of Count II with prejudice; and grant such other and further relief as the Court deems just and proper, including leave to file an affidavit of counsel to seek fees related to this motion.

Respectfully submitted:

**CAPES, SOKOL, GOODMAN & SARACHAN, P.C.**

By: /s/ *Zachary R. McMichael*
Zachary R. McMichael, #68251(MO)
8182 Maryland Ave., Fifteenth Floor
St. Louis, Missouri 63105
(314) 721-7701 (telephone)
(314) 721-0554 (facsimile)
mcmichael@capessokol.com

***Attorneys for Defendants Riverdale Packaging Corporation and Lora Property Investments, LLC***

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all counsel of record for the parties on October 30, 2026 via the Court's CM/ECF electronic filing system.

/s/ *Zachary R. McMichael*